GUIDRY, Judge.
Plaintiff, Bobby Lee Carroll, instituted this action against Frank Terral, defendant, for workman’s compensation benefits as a result of an injury he allegedly sustained in the course and scope of his employment on July 22, 1974. At the time of his alleged injury plaintiff was working with his uncle, Eugene Pippins, who was producing pulpwood for the defendant, Frank Terral.
Plaintiff appeals from the trial court judgment dismissing his claim for workmen’s compensation benefits.
Plaintiff contends that the trial court erred in failing to find that his injury of July 22, 1974 was unrelated and distinguishable from the work connected injury *736 he sustained on November 25, 1971 and for which he received total and permanent workmen’s compensation disability benefits. The trial court found that the plaintiff sustained no new injury to his shoulder on July 22, 1974. The trial court did determine that the plaintiff was suffering from a cervical disc problem, however, denied recovery finding that the disc problem began before July 22, 1974, the date of plaintiff’s alleged injury while in the employ of Frank Terral, defendant.
The claimant in this matter, Bobby Lee Carroll, was previously injured on November 25, 1971 and as a result thereof received an award for total and permanent workman’s compensation benefits in litigation previously before this court. Bobby Carroll v. Southern Casualty Insurance Company, 285 So.2d 370 (La.App. 3rd Cir., 1973), writ denied 288 So.2d 356 (La.1974). In the cited case the plaintiff herein, Bobby Carroll, sued for workman’s compensation benefits, alleging that he had sustained a shoulder injury. In Carroll, supra, this court in reviewing the medical evidence concerning plaintiff’s injury and in concluding in regard to its permanent nature stated as follows, pgs., 371, 372, 373, 375:
“On December 1, 1971, plaintiff was examined and treated by Dr. I. C. Turn-ley, Jr., a general practitioner of Jena. Doctor Turnley found swelling and tenderness in the right shoulder joint and was of the opinion that plaintiff had a possible separation of the acromio-clavicular joint . . .
Doctor Turnley immediately referred plaintiff to Dr. T. E. Banks, an ortho-paedic specialist of Alexandria, whom he saw on the same day. Doctor Banks’ examination confirmed Doctor Turnley’s diagnosis and plaintiff was admitted to the hospital the following day. On December 10 an operation was performed to stabilize the shoulder joint so as to allow the ligaments to heal .
Plaintiff was again seen by Doctor Banks on August 2, 1972. Plaintiff complained to the orthopaedist of burning and aching sensation, after a period of labor, in the scapula region behind the shoulder, rather than the site of the injury. The doctor found tenderness in this area and was of the opinion that the transverse scapula nerve was irritated .
Doctor Turney also re-examined plaintiff on May 7, 1972, (sic)[1] the day of trial.
At that time, when asked for an opinion as to plaintiff’s present condition, he explained:
‘Following a separation of the acromio-clavicular joint and following its healing, very often we find- — I shouldn’t say very often — occasionally we find residual effects in the shoulder joint caused by disuse and effects from the injury itself, trauma to the joint capsule and so forth, which causes a swelling of the synovial tissue, this is the lining of this joint and the bursa surrounding it. This synovial tissue, being very sensitive, is often frequently the cause and origin of subsequent pain. It will make the shoulder joint, or that particular area, more sensitive to trauma, it will make it more sensitive to excess use, and many other things, all of which are relatively minor, but they are noticeable and they cannot be ignored when they do occur. Now, this man developed what we call tendonitis following this episode, which is nothing more than just an inflammatory process at the attachment of the tendons around this acromioclavicular joint. And this will cause pain and increased sensation and some swelling of the joint and so forth, for an indefinite period of time. Now we can immobilize his shoulder and it will get better, but when he starts using it again it will reoccur. For a period of time, and I don’t know how long, maybe a *737 year, maybe two years, maybe ten years’ ” (emphasis mine)
“Each case must rest upon its own facts. In the instant case it is evident from the medical evidence as well as from plaintiff’s own testimony that as a result of pain he is unable to fulfill the functions of his former job. Plaintiff can no longer place the large pulpwood logs on his shoulder, nor can he use a saw without considerable pain. Prior to the accident, he customarily perform-these duties and other heavy labor requiring the use of his shoulder. The record further indicates that if plaintiff continues his former work on a regular basis it would likely be deleterious to his health and recovery.”
“The trial judge concluded:
‘ . . . [the pulpwood field] . . . calls for more physical agility and movement and sheer hard work than most others .... I’m of the opinion that this man cannot do the work that he was doing before without pain or without his arm swelling up, and Dr. Turnley testified that he felt that the man’s complaints were genuine.any time this man puts in a full day’s work without help, his arm swells up and he has considerable amount of pain. Now, under the circumstances then, he has been able to work doing something radically different; as I see it, handling tongs around pulpwood is really quite a bit different because handling a saw is very difficult, much more difficult than carrying a set of tongs and attaching them to a tree, allowing somebody else to turn on the machine and drag the wood out.
So I am of the opinion that he can’t work without the aid of a helper. I am also of the opinion that continuation of employment of a nature that he did at the time he was hurt just prolongs his disability. Dr. Turnley said that continuation of this will aggravate it and that he is likely to continue to have this type of trouble any time that he goes back to work and tries to do so without help.’
We cannot say that the trial judge erred in arriving at that conclusion.”
In the instant matter plaintiff’s petition states that while carrying out routine duties, and while loading handwood, “petitioner’s shoulder swelled, became painful and became totally disabling, and he developed an acromioclavicular strain at (sic) [2] a cervical disc syndrome . . . ”
The lay testimony substantiated the petitioner’s allegations as to the pain and swelling in his shoulder. Bobby Phillips, the plaintiff’s brother-in-law, who was cutting and stacking logs with the plaintiff on the day of the alleged injury remembered no accident involving plaintiff. Bobby Phillips did remember the plaintiff’s complaints in regard to the pain in his shoulder.
The plaintiff, who had just returned to Louisiana was working with the defendant in the pulpwood business only two days when the alleged injury occurred. Prior to this time and following his injury in November of 1971, plaintiff sporadically performed very strenuous jobs, including work for an oilfield drilling company and as a garbageman for the City of Monroe. In each instance he left such employment becoming unable to perform the work because of pain and swelling in his arm and neck. He at one point in time, moved to Dolphin, Alabama where he worked in a weaving factory for about three weeks. His duties there entailed carrying and lifting heavy spools of yam. Plaintiff testified that one reason he left this job was because of the pain he was experiencing in his shoulder and neck. Upon his return to Louisiana he was hired by his uncle Eugene Pippens, to help produce pulpwood for the defendant. After two days on the job, his shoulder and neck *738 became swollen. On the second day, i. e., July 22, 1974 plaintiff quit and has not worked since.
Dr. Billy C. Nesbitt, a general practitioner, saw the plaintiff on July 23, 1974 the day after the alleged injury. His report on that date indicated that plaintiff had possibly sustained a reinjury of his right shoulder. The Doctor’s notes further reflected that there was some swelling in the plaintiff’s right arm. No other remarkable signs were noted. No examination of the neck was made.
On August 6, 1974, Dr. C. W. Lowery, an orthopaedic surgeon, examined plaintiff. The Doctor found that plaintiff’s complaints were related to the continued swelling of his shoulder and arm which condition related to his prior injury. The Doctor found that plaintiff was suffering from an acromioclaovicular strain as a result of the old injury.
The plaintiff next saw Dr. T. E. Banks, an orthopaedic surgeon,, who had treated him for his injury in 1971. The examination on August 30, 1974 revealed acute tenderness on posterior oblique bending of the neck, with slight tenderness in the acromioclavicular joint. Dr. Banks also noted swelling in the arms, and based upon these findings diagnosed a possible cervical disc injury. The plaintiff was hospitalized for 48 hours. Traction and medication helped alleviate the pain. Dr. Banks stated that the pain from the transverse scapula nerve, with which the plaintiff had had problems since August 1972, could be the same nerve root that would cause pain from the neck and down the right arm.
Dr. Nesbitt again examined plaintiff on March 28, 1975. At this time the doctor noted swelling in the right shoulder and arm, diagnosing a possible cervical strain and right shoulder strain. The evidence in this regard shows that the plaintiff was engaged in a personal activity involving strenuous physical labor the day before. Plaintiff admitted to the use of a heavy hammer on March 27, 1975 and that immediately afterwards his shoulder flared up again.
The medical testimony in Carroll, supra, predicted that plaintiff’s persistence in performing heavy manual labor would result in a reoccurrence of pain and swelling in the acromioclavicular joint. In the earlier case Dr. Turnley opined that such symptoms of pain and swelling would reoccur when heavy labor was performed for “maybe a year, maybe two years, maybe ten years.” The record in this matter reveals the accuracy of that prediction. We agree with the trial court that plaintiff suffered no new injury on July 22, 1974, rather his difficulty arose as a result of his inability to perform the type of work in which he was then engaged because of the old injury of November 25, 1971.
We entertain serious doubt as to the trial judge’s conclusion that plaintiff suffers from a cervical disc problem. There is no medical evidence which would support this conclusion other than the suggestion by Dr. T. E. Banks of the “possibility” that plaintiff has such a problem. In any event, we do agree that the trial court could reasonably conclude from the record that if plaintiff does suffer from a cervical disc syndrome such condition existed prior to his employment with the defendant.
Under the provisions of our Workmen’s Compensation Act an employee is entitled to benefits only if he receives personal injury by accident arising in the course of his employment.
We 'conclude as did the trial court that plaintiff has not borne his burden of proving that any present disability from which he suffers was caused by an accident in the course of his employment with the defendant.
For the above and foregoing reasons the judgment appealed is affirmed. All costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.

. The day of the trial was May 7, 1973 not May 7, 1972 as indicated.

. Should be and rather than at.